UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINZIE J. LEDBETTER<br><br>   Plaintiff,<br><br>  v.<br><br>SHAWN FREEMAN, JIMMY LEADINGHAM,<br>DARLA HARRIS, CHRISTINA GARRETT,<br>GENE TURK, and JACKSON COUNTY MASS<br>TRANSIT DISTRICT,<br><br>   Defendants. | Case No. 23-cv-3394-JPG |

**MEMORANDUM AND ORDER**

  This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Shawn Freeman, Jimmy Leadingham, Darla Harris, Christina Garrett, and Jackson County Mass Transit District ("JCMTD"; collectively, "County Defendants") (Doc. 26).  Plaintiff Linzie J. Ledbetter has responded to the motion (Doc. 28).

  While not accepting all of the County Defendants' arguments, the Court will trim this case down because Ledbetter has not stated a claim as to some causes of action, has alleged claims against individuals who cannot be liable, has waited too long after receiving a right-to-sue letter to sue over some claims, and has waited too long after the cause of action's accrual to sue over other claims.

**I.  Standard for Dismissal**

  When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations. *Bell Atl.*, 550 U.S. at 555. Nevertheless, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. That means that in an employment discrimination case, "a plaintiff must advance plausible allegations that [he] experienced discrimination because of [his] protected characteristics. *Kaminski*, 23 F.4th at 776 (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021)). If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667; *see, e.g., Kaminski*, 8 F.4th at 776-77.

**II.      Facts Alleged**

As a preliminary matter, the County Defendants' motion to dismiss refers to matters

outside the pleadings, namely the Charge of Discrimination Ledbetter filed on January 11, 2023, and a right-to-sue letter the Equal Employment Opportunity Commission ("EEOC") issued on January 31, 2023, in response to that charge.  When such material is presented in connection with a Rule 12(b)(6) motion to dismiss, ordinarily the Court may treat the motion to dismiss as a motion for summary judgment or it may exclude the additional material from consideration.  *See* Fed. R. Civ. P. 12(d).  However, there is an exception to this general rule where the attached material is expressly referenced in the complaint and is central to the plaintiff's claim.  *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citing *Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Ledbetter expressly references his January 2023 charge in his Complaint as a basis for retaliation, and the disposition of that charge is inextricably bound up with that charge.  *See Giovanni v. Megabus USA, LLC*, No. 14 C 3195, 2015 WL 6449133, at *1 n. 1 (N.D. Ill. Oct. 23, 2015).  The Court will therefore consider those documents in deciding the County Defendants' motion to dismiss.

Taking all well-pled facts alleged in the Complaint as true, the Court finds the following for the purposes of this motion.

Ledbetter has been employed by the JCMTD from 2012 to the present.  Defendant Freeman was the JCMTD Director, defendant Leadingham was the Operation Manager, and defendant Harris was the Dispatching Supervisor at the relevant times.

From early 2019 to January 2021, Ledbetter was employed as a driver of JCMTD vehicles.  Because of a prior work-related back injury, he was not able to perform wheelchair transfers (*i.e.*, assisting passengers in wheelchairs to board and ride in a vehicle), a normal function of drivers.  JCMTD accommodated him by assigning him routes that did not require

wheelchair transfers.

In January 2021, Ledbetter took FMLA leave and returned to work in April 2021.  On his return, he was not reinstated as a driver but was instead made a dispatcher.  The only reason JCMTD gave for this change was that Ledbetter could no longer be a driver because his back injury prevented him from performing wheelchair transfers.  JCMTD was no longer willing to accommodate his back injury by assigning him routes that did not require wheelchair transfers.  In an effort to regain his position as a driver, Ledbetter offered to perform wheelchair transfers, but JCMTD turned him down.

Following Ledbetter's return to work as a dispatcher, his working conditions deteriorated.  On October 26, 2022, Ledbetter was written up and given a verbal warning for "mixing up scheduling and excessive call length" a few weeks earlier.  County Defs.' M. Dism, Ex. A, Charge of Discrimination 1(Doc. 26-1).  Ledbetter asserts that he was only "doing the same things that other similarly situated employees do at work."  Compl. 6 (Doc. 3).  The following day, he appealed his write-up and verbal warning to the JCMTD Board but had no success in overturning the discipline.  Issues at work caused Ledbetter's blood pressure to become high, so he again took FMLA leave from October 27, 2022, to January 9, 2023, and returned to work on January 10, 2023.

On his return in January 2023, in front of the other dispatchers, defendant Harris called Ledbetter into a meeting with herself and defendants Freeman and Leadingham.  They wanted to discuss why Ledbetter "had not taken a call on the phone."  Compl. 6 (Doc. 3).  Once again, Ledbetter asked—twice—if he could be a driver, and Freeman said no but did not explain why other than to say that the JCMTD Board and its attorney agreed that Ledbetter could no longer be a driver.

On January 11, 2023, Ledbetter filed a Charge of Discrimination (Charge No. 560-2023-00873; Doc. 26-2) with the EEOC complaining that the JCMTD violated his rights under the Americans With Disabilities Act ("ADA") when it refused to reinstate him as a driver after taking FMLA leave in 2021 and again after requesting to be a driver in October 2022 and in January 2023.  The EEOC issued a right-to-sue letter dated January 31, 2023.  On June 1 and June 29, 2023, JCMTD wrote Ledbetter up for filing the January 2023 EEOC charge.  The June 1, 2023, write up was also for asserting a violation of his FMLA rights in 2021.

At some unspecified point, Harris began speaking to Ledbetter differently than she did to other dispatchers and began writing him up for the same things other dispatchers did.  Also at some unspecified point, defendant Garrett, the Lead Dispatcher, began speaking to Ledbetter in a different tone of voice that she did to other dispatchers, spoke badly about him, blamed him for mistakes that were not his, caused drivers and clients to lose respect for him, and ignored his questions or gave a smart-aleck response.

At some unspecified point in time, JCMTD hired a White man with less experience than Ledbetter and two women as drivers, allowed a Black woman and a White woman dispatcher to drive, and allowed Garrett to drive before she became the Lead Dispatcher.

Ledbetter filed a second EEOC charge on July 7, 2023 (Charge No. 560-2023-02375; Doc. 3), indicating he had experienced discrimination on the basis of disability, race, and sex, and had experienced retaliation.  In the narrative description of his claim, he asserted that JCMTD retaliated against him for his January 2023 EEOC charge by disciplining him and failing to reinstate him as a driver.  He also asserts JCMTD has hired numerous employees outside his protected group (Ledbetter appears to be a Black man) as drivers, and promoted Garrett to Lead Dispatcher instead of him.  He also complains that since her promotion, Garrett has created a

hostile work environment for him. On July 20, 2023, he received a right-to-sue letter dated July 11, 2023.

Ledbetter filed this lawsuit on October 16, 2023, within 90 days of receiving the right-to-sue letter for his July 7, 2023, charge. In the Complaint, he asserts claims under[1]:

- Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e—2000e-17, for unlawful discrimination based on race and sex when the JCMTD failed to hire him as a driver while hiring others not in his protected class and created a hostile work environment by Harris's and Garrett's conduct;

- the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112—12117, and § 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 594, for failing to hire him as a driver because of his back condition, for failure to accommodate his need for a driver route that did not require wheelchair transfers, and for retaliating against him for filing the January 2023 EEOC charge by increased discipline and failing to make him a driver; and

- the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601—2654, for failing to return him to his position of driver after he took FMLA leave in 2021 and for retaliating against him for using FMLA leave.

In his Complaint, Ledbetter makes passing references to "Title 1, 2, 6" and to §§ 501 and 503 of the RA. Compl. 4 (Doc. 3). To the extent Ledbetter intends to refer to Titles I (regarding voter registration qualifications), II (regarding discrimination in public accommodations), and VI (regarding discrimination in participation in programs receiving federal funding) of the Civil Rights Act of 1964, he has not pled fact plausibly suggesting violations of those statutes. Simply working in a building that is a place of public accommodation does not trigger Title II liability unless access to the public building and its facilities is improperly denied, which Ledbetter's factual allegations do not plausibly suggest.

---

[1] The Court has attempted to make sense out of a disjointed description of the causes of action in the Complaint. To the extent the Court might have missed a claim, the Court would entertain a motion for leave to amend the Complaint to include the omitted claim. The Court reminds Ledbetter that a proposed Amended Complaint must be submitted with any motion for leave to amend.

Similarly, he has not pled facts plausibly suggesting violations of § 501, 42 U.S.C. § 791 (creating right of action for federal employees to sue for disability discrimination), or § 503, 42 U.S.C. § 793 (promoting employment of qualified people with disabilities by federal contractors), of the RA.  Mere receipt of federal funds is not sufficient to subject a defendant to liability under §§ 501 and 503, and nothing in Ledbetter's complaint suggests the defendants are federal contractors.  Federal funding is only sufficient to subject an employer to liability under § 504, 29 U.S.C. § 794.

To the extent Ledbetter attempts to plead the claims discussed in the foregoing two paragraphs, they are dismissed without prejudice.

### III. Discussion

The County Defendants offer eleven reasons the Court should dismiss Ledbetter's case.  Some of the arguments reflect a misunderstanding of the federal notice pleading standard.  Although that standard is more rigorous after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the federal notice pleading standard has never required a plaintiff to plead facts supporting each element he would be required to support on summary judgment.  "The Federal Rules of Civil Procedure do not require a plaintiff to allege legal theories or even facts corresponding to each element of a claim," especially *pro se* plaintiffs.  *Sargeant v. Barfield*, 87 F.4th 358, 361 (7th Cir. 2023); *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023).  "A claim must be plausible, but it need not supply the specifics required at the summary-judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  So the Court rejects the County Defendants' arguments based on Ledbetter's failure to plead such things as specific similarly situated individuals who were treated differently, the severity or pervasiveness of

harassing conduct, the essential job functions of a driver, what a reasonable accommodation entailed, or a materially adverse employment action.[2]  Now the Court will turn to the County Defendants' other arguments.

      A.      <u>Liability of Individual Defendants</u>

The County Defendants rightly note that there is no individual liability for claims under Title VII, the ADA, or § 504 of the RA.  An individual is generally not an employer under Title VII or the ADA and therefore cannot be liable under those statutes.  *Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) (citing *Williams v. Banning*, 72 F.3d 552, 554-55 (7th Cir. 1995) (Title VII); *E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir. 1995) (ADA)); *Robinson v. Sappington*, 351 F.3d 317, 332 n.9 (7th Cir. 2003) (Title VII).  Likewise, § 504 of the RA applies only to federal financial assistance recipients, not individuals.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) (RA; collecting cases).

The allegations in the Complaint do not establish facts plausibly suggesting the individual County Defendants were Ledbetter's employers or received federal financial grants.  Therefore, they cannot be liable under Title VII, the ADA, or § 504 of the RA, so the Court will dismiss those claims with prejudice.

      B.      <u>Timeliness of Lawsuit After Right-to-Sue Letter</u>

The County Defendants argue that Ledbetter did not timely file his Title VII and ADA claims against JCMTD.  They argue that, although he timely filed his case after receiving a right-

---

[2] The Court further notes that the County Defendants' argument about what constitutes an "adverse employment action" is likely outdated after the recent Supreme Court decision in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (Apr. 17, 2024) (holding adverse employment action need not "significantly" alter terms and conditions of employment).

to-sue letter for his July 7, 2023, charge, the same acts were the basis for his January 11, 2023, charge, and he did not timely file his lawsuit after receiving a right-to-sue letter for that charge.

Before bringing a Title VII or ADA claim, a plaintiff must present a claim in a charge to the EEOC and receive a letter from the EEOC advising of the right to file a private lawsuit.  42 U.S.C. § 2000e-5(e)(1) & (f)(1) (Title VII); 42 U.S.C. § 12117(a) (adopting Title VII powers, remedies, and procedures for ADA): *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019); *see Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019) ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one. . . ."). Once a plaintiff receives a right-to-sue letter, he must file a lawsuit about the claims in the charge, if at all, within 90 days. 42 U.S.C. § 2000e-5(f)(1); *Fort Bend Cnty.,* 139 S. Ct. at 1847.

A plaintiff may sue only on "those claims that were included in the EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez*, 937 F.3d at 1004 (internal quotations and citations omitted). "Claims are 'like or reasonably related' when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (internal quotations and citations omitted). The charge and the complaint must "describe the same conduct and implicate the same individuals." *Id.* (internal citations and quotations omitted). If so, the employer will have had fair warning of the claims against it and a fair chance to settle the dispute during the administrative proceedings. *Haugerud v. Amery Sch. Dist*., 259 F.3d 678, 689 (7th Cir. 2001).

Things become complicated when a plaintiff has filed multiple EEOC charges based on the same facts. *See, e.g., Giovanni v. Megabus USA, LLC*, No. 14 C 3195, 2015 WL 6449133

(N.D. Ill. Oct. 23, 2015). Where a plaintiff files a complaint more than 90 days after the first right-to-sue letter but within 90 days of the second right-to-sue letter, whether the lawsuit is timely requires a close look at the charges underlying the right-to-sue letters.

The purpose of requiring a charge and exhausting administrative remedies before a plaintiff can file a lawsuit is to give an employer fair warning of the claims against it and a fair chance to settle the dispute during the administrative proceedings. *Chaidez*, 937 F.3d at 1004; *Haugerud*, 259 F.3d at 689. However, the purpose of providing deadlines for a plaintiff to file a lawsuit within 90 days of receiving a right-to-sue letter is to get the matter moving toward a prompt resolution. A plaintiff cannot be permitted to do an end-run around the 90-day limit by filing a second charge that complains of the same conduct or conduct similar enough to be within the scope of the first charge. *Giovanni*, 2015 WL 6449133 at *3 (citing *Blalock v. Bethesda Lutheran Homes & Servs.,* No. 01 C 9188, 2002 WL 31833693, at *3 (N.D. Ill. Dec. 16, 2002)). Otherwise, the time limit would be rendered meaningless. A plaintiff could evade the exhaustion requirement by simply filing a new charge based on the same conduct and waiting for a new right-to-sue letter and a new 90-day period. *Giovanni*, 2015 WL 6449133 at *3; *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (*per curiam*). To provide a new 90-day period, a second EEOC charge cannot be "a mere re-allegation of the first EEOC charge"; it may not be "reasonably related or similar enough to be within the scope of the first charge." *Blalock*, 2002 WL 31833693, at *3.

The Court turns to Ledbetter's two EEOC charges to see if the second alleges the same facts as the first or facts similar enough to be within the scope of his first charge. His January 11, 2023, charge says this (reformatted here for clarity):

    I.    l am an individual with a disability and have been employed by the Jackson County Mass Transit District since September 9, 2012. I was first

       appointed as a Driver, then became a Dispatcher.
II. On April 5, 2021, I returned from Family Medical Leave Act (FMLA), and I was placed in the position of dispatcher. I advise[d] my employer that I would like to reassume my position as a Driver, however I was not allowed to do so.
III. On October 26, 2022, I received a verbal warning from Darla Harris, the Dispatch Supervisor and Jimmy Leadingham, the Operations Manager for mixing up scheduling and excessive call lengths. The warning was regarding an incident that took place on October 6, 2022. During the meeting, I requested to be returned to the position of a Driver, but my employer still refused my request. The next day, on October 27, 2022, a board meeting was held where I discussed my verbal warning and made my case to be returned to the position of a driver. My request remained unresolved. I took FMLA on October 27, 2022, until January 9, 2023, due to medical issues that were exacerbated by the meeting.
IV. [erroneously labeled as III.] On January 9, 2023, after returning from FMLA, I had a meeting with Jimmy and Shawn Freeman, the Director, where I was advised that I would not be able to drive again. When I asked why they would not provide me with an answer and would not put any information in writing. I requested to go home after the meeting, because I did not have computer access to perform my job.
V. On January 10, 2023, I was scrutinized by Darla for cleaning my desk area and reacclimating myself after being gone for three months. Another meeting was held that day with me, Darla, Jimmy and Shawn. I asked again if I could be returned to the position of a driver, but again, was denied. I was told that their attorney and the board members agreed that [I] would not drive for them again and would not be able to do so even if they were no longer employed.
VI. I believe I have been discriminated against based on my disability, by being denied the option to return to my original position as a driver, in violation of the Americans [W]ith Disabilit[ies] Act of 1990 as amended.

1/11/23 Charge of Discrimination (Doc. 26-1). His July 7, 2023, charge says this:

    1 have been employed with the above-named employer since September 9, 2012. I am currently a Dispatcher making around $18.25 an hour. My supervisor is Darla Harris, Dispatching Supervisor, and her supervisor is Jimmy Leadingham, Operations Manager, his supervisor is Shawn Freeman, Director of Jackson County Mass Transit District.

    On January 26, 2023, I filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission {EEOC Charge No.: 560-2023-00873}.

    I believe I have been the victim of retaliation since filing the aforementioned charge. For example, my supervisors, Darla Harris and Jimmy Leadingham, subjected me to increased discipline. My employer has refused to place me back

>in my position as a Driver, a position I was in prior to my FMLA 2021. In addition, Respondent has hired three employees outside my protected class, two females, and a White male. as Drivers since on or around May 2023. Respondent failed to uphold its anti-retaliatory policy. The Respondent promoted Christina Garrett to lead dispatcher. They denied me the promotion stating because I am not a driver. Ms. Garrett has since then subjected me to a hostile work environment. In or around April 2023, the Respondent hired a similarly situated employee outside my protected class, a female, as a Dispatcher and has allowed her Drive. I believe the Respondent is trying to build a case against me to discipline further and/or terminate me.
>
>I believe I have been retaliated against for filing an EEOC charge and utilizing FMLA as a reasonable accommodation, in violation of Title VII of the Civil Rights Act of 1964, as amended. and the Americans [W]ith Disabilities Act of 1990, as amended.

7/7/23 Charge of Discrimination (Doc. 3).

The Complaint in this case alleges that JCMTD failed to return him to driver, the signal accusation in Ledbetter's first charge. He reasserts the same conduct in his second charge. While it is true that his theory in the first charge was disability discrimination, in the second charge was retaliation, and in the Complaint is race/sex discrimination, disability discrimination, and FMLA, the relevant facts concern JCMTD's failure to return him to his position as a driver, and the facts are what matters here, not the legal theories. *See Giovanni*, 2015 WL 6449133 at *3. Ledbetter raised the failure to return him to a driver position in his first charge, so any legal claim asserting that failure must have been brought within 90 days of his receipt of the January 31, 2023, right-to-sue letter. He has not suggested his October 16, 2023, complaint was timely after his first right-to-sue letter, so the Court finds his claims of discrimination and retaliation under Title VII and the ADA for failure to reinstate him a driver are too late. His second charge will not give him another 90-day period to file suit based on that conduct.

  C. <u>Statute of Limitations</u>

JCMTD invokes the two-year statute of limitations of Title VI of the Civil Rights Act of

1964, § 504 of the RA, and the FMLA.  Ordinarily, the statute of limitations is an affirmative defense that is not appropriate for consideration on a motion to dismiss because the plaintiff has no duty to plead around such a defense, *see Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) ("[A] plaintiff's complaint need not anticipate or refute potential affirmative defenses."), *cert. denied*, 144 S. Ct. 71 (2023).  This standard, however, will not prevent dismissal of a complaint that pleads too much.  "Where a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground."  *Orgone Cap. III v. Daubenspeck*, 912 F.3d 1039, 1043-44 (7th Cir. 2019) (citing *O'Gorman v. City of Chi.*, 777 F.3d 885, 889 (7th Cir. 2015)).  This is what the County Defendants claim Ledbetter has done in this case.

   The Court has already disposed of Ledbetter's Title VI claim, so it need only look now to the RA and the FMLA.  In Illinois, both have a two-year statute of limitations, but the FMLA period is expanded to 3-years for a willful violation.  *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933 (7th Cir. 1993) (RA borrows Illinois' 2-year personal injury statute of limitations, 735 ILCS 5/13-202); *see Rutledge v. Ill. Dep't of Hum. Servs.*, 785 F.3d 258, 260 (7th Cir. 2015) (RA); 29 U.S.C. § 2617(c)(1)-(2) (two-year limitations period for FMLA unless willful, where three-year limitations period applies).  Generally, that means any RA or FMLA claim that occurred before October 16, 2021, is time-barred.

   A non-willful FMLA claim based JCMTD's failure to return Ledbetter to a driver position after taking from FMLA leave in April 2021 is barred by the statute of limitations.  JCMTD made that decision in April 2021, but Ledbetter did not file a lawsuit within 2 years of that decision.  However, he has pled sufficient facts to plausibly suggest that decision was in willful violation of the FMLA, so the three-year statute of limitations might apply.  Therefore the

13

Court cannot dismiss Ledbetter's FMLA claims.

As for Ledbetter's RA claim for failure to reinstate him as a driver in 2021 because of his back injury, that claim is time-barred. While it is true that over the following months he continued to ask JCMTD to reconsider its decision not to make him a driver again, a plaintiff cannot extend the statute of limitations simply by asking for reconsideration of the allegedly offending decision. *Williamson v. Ind. Univ.*, 345 F.3d 459, 463 (7th Cir. 2003) ("The decision not to reverse an adverse employment decision is not a fresh act of discrimination."). Thus, his RA claim that JCMTD failed to reinstate him as a driver because of his back injury is time-barred.

The Court will allow Ledbetter's RA failure to accommodate claim remain in light of the fact that an identical claim under the ADA remains; the County Defendants did not seek dismissal of that claim in its motion.

D. <u>Retaliatory Action</u>

The County Defendants argue that Ledbetter has not pled facts plausibly suggesting he suffered a "materially adverse employment action" in retaliation for taking FMLA leave and filing an EEOC charge.

In the retaliation context, an adverse action need not be a tangible employment action like a firing or a refusal to promote. *See Lesiv v. Ill. Cent. R.R.*, 39 F.4th 903, 912 (7th Cir. 2022) (contrasting with Title VII *discrimination* action; citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006)). It need only be something "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57.

Ledbetter alleges facts describing, among other things, the failure to return him to work

14

as a driver, a hostile environment, and increased, uneven discipline after exercising his right to complain. These are the kinds of things a reasonable jury could find would be likely to dissuade a reasonable person from exercising his rights under the ADA, RA, or FMLA. Those allegations alone would prevent dismissal of Ledbetter's retaliation claims against JCMTD for failure to state a claim.

      E.      Individual FMLA Liability

The County Defendants ask the Court to dismiss defendants Freeman, Leadingham, and Harris from Ledbetter's FMLA claims because he did not plead facts showing that they interfered with or retaliated against Ledbetter for taking FMLA leave. The FMLA allows individuals to be liable if they were acting in the employer's interest. *See* 29 U.S.C. § 2611(4)(A)(ii)(I) (defining "employer" to include persons acting in the employer's interest); *Eppinger v. Caterpillar Inc.*, 682 F. App'x 479, 481 (7th Cir. 2017); *Summerland v. Exelon Generation Co.*, 510 F. Supp. 3d 619, 626 (N.D. Ill. 2020). Ledbetter directly alleges Harris participated in creating a hostile work environment and that Freeman and Leadingham refused to reinstate him as a driver, the retaliatory actions he claims. These defendants were acting on behalf of JCMTD at the time, so it is plausible under the facts pled in that Complaint that they might have FMLA liability.

      F.      Punitive Damages

Although the unavailability of a certain type of damages is not a basis for dismissal a claim, the County Defendants are correct that the FMLA and RA claims do not allow punitive damages. *See Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016) (FMLA); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (RA). Ledbetter does not contest this assertion.

### IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES** in part the County Defendants' motion to dismiss (Doc. 26) as follows:

    - the following claims are **DISMISSED without prejudice**:
        - Ledbetter's claims under Title I, Title II, and Title VI of the Civil Rights Act and his claims under §§ 501 and 503 of the RA against the County Defendants;

    - the following claims are **DISMISSED with prejudice**;
        - Ledbetter's Title VII, ADA, and RA claims against the individual County Defendants;
        - Ledbetter's Title VII claims for unlawful discrimination based on race and/or sex when JCMTD failed to reinstate him as a driver while hiring others not in his protected class;
        - Ledbetter's ADA and RA claim for unlawful discrimination based on his back injury when JCMTD failed to reinstate him as a driver; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The following claims Ledbetter alleges in this case shall proceed:

- Title VII of the Civil Rights Act against JCMTD for a hostile work environment;

- ADA and § 504 of the RA against JCMTD for failure to accommodate his need for a driver route that did not require wheelchair transfers, and for retaliating against him for filing the January 2023 EEOC charge by increased discipline and failing to make him a driver;

- FMLA against the County Defendants for willfully failing to return him to his position of driver after he took FMLA leave in 2021 and for retaliating against him for using FMLA leave; and

- All claims against defendant Gene Turk.

**IT IS SO ORDERED.**
**DATED:  May 9, 2024**

                                                           s/ J. Phil Gilbert
                                                           **J. PHIL GILBERT**
                                                           **DISTRICT JUDGE**